**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DANISH CROWN AMBA, | : | |
| Plaintiff, | : | Civil Action No. 10-4603 (MAS) (TJB) |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| RUPARI FOOD SERVICES, INC., | : | |
| Defendant. | : | |

**SHIPP, District Judge**

 This matter comes before the Court on Defendant Rupari Food Services, Inc.'s ("Defendant" or "Rupari") Motion for Judgment as a Matter of Law or, in the alternative, a New Trial (ECF No. 124) following a jury verdict and damages award against Defendant (ECF Nos. 119, 120). Plaintiff Danish Crown AMBA ("Plaintiff" or "Danish Crown") opposes Defendant's motion. (ECF No. 128.) The Court, having carefully considered the parties' submissions, decides the matter without oral argument pursuant Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

 The underlying issue in this case arises from a breach of contract claim between two merchants, Plaintiff and Defendant. On December 5, 2008, by way of e-mail correspondence, Plaintiff and Defendant entered into an installment contract. (ECF No. 131.) The contract was for the purchase of wide back ribs, and the parties refer to the contract as the "2009 Back Rib Agreement." (*Id.*) Plaintiff, a company located in Denmark, is engaged in the business of, *inter*

1

*alia*, international meat-processing, and the slaughter, sale and marketing of meat.  Plaintiff also has subsidiaries in the United States that sell its products.  (*Id.*)  In 2010 and 2011, Danish Crown USA and Plumrose, Inc. ("Plumrose"), were wholly-owned subsidiaries of Plaintiff.  Defendant is a privately-held company that imports, manufactures, and distributes pork products to retail and food service customers throughout the United States.  (*Id.*)  The parties conducted business together since the late 1980s.  (*Id.*)

Under the 2009 Back Rib Agreement, Plaintiff agreed to sell and deliver, and Defendant agreed to purchase and accept, approximately 6.6 million pounds of wide back pork ribs.  (*Id.*)  The parties agreed that the ribs were to be supplied in the following specifications ("Specifications"): (1) 6cm x 10cm x 10cm; (2) 23 ounces or below, 23 to 25.5 ounces, or 25.5 ounces and up; (3) "Always Natural Fall"; (4) "No Cut Off Bones"; and (5) "No Chinebones."  (*Id.*)  Plaintiff agreed to package thirty-four racks of ribs per container.  (*Id.*)  The contract also specified a $125.40 fixed price per case of ribs, totaling $127.16 with the inclusion of applicable shipping costs.  (*Id.*)  The 2009 Back Rib Agreement also addressed concerns about non-conforming ribs and stated that the issues with "shiners"[1] must be resolved under this new contract.  (*Id.*)

Defendant began accepting installments under the 2009 Back Rib Agreement in January 2009.  (*Id.*)  On or about January 25, 2010 and February 26, 2010, Defendant received loads of ribs pursuant to the 2009 Back Rib Agreement, which it alleged did not comply with the agreed-upon Specifications.  (*Id.; see also* ECF No. 124.)  The alleged non-conformities included racks of ribs that were cut down and did not meet the agreed-upon Specifications.  (ECF No. 124.)

---

[1] "Shiners" consist of ribs that lack sufficient meat on the bone, causing the bone to be exposed. (Trial Tr. 117-18, ECF No. 121.)  Shiners occur when the rib is not properly cut from a pig's loin at the slaughterhouse.  (*Id.*)

Despite Defendant's complaints to Plaintiff informing Plaintiff of the non-conforming foods, delivery of non-conforming goods remained an ongoing issue. (ECF No. 132.)

By April 2010, Defendant requested that additional quality measures be undertaken for the remaining loads of ribs. Defendant eventually ceased accepting rib installments under the 2009 Back Rib Agreement. On May 6, 2010, after several e-mail correspondence and telephone exchanges between the parties regarding the conforming ribs, Plaintiff was informed that Defendant stopped accepting containers under the 2009 Back Rib Agreement because the goods failed to meet the agreed-upon Specifications. (*Id.*) Thereafter, it is uncontested that Defendant outright rejected the remaining installments under the 2009 Back Rib Agreement, and that some of the ribs within the accepted installments did not meet the Specifications as outlined in the 2009 Back Rib Agreement. At the time Plaintiff filed its Complaint in this matter (ECF No. 1), Defendant had accepted delivery of 1840 metric tons of ribs and refused delivery of 1160 metric tons of ribs under the 2009 Back Rib Agreement.

Between March 7, 2016 and March 16, 2016, the Court presided over a jury trial. At the conclusion of Plaintiff's case, Defendant moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). (ECF No. 132.) The Court reserved its decision on Defendant's motion. (*Id.*) After a seven-day trial, the jury returned a verdict of $2,123,145.63 in favor of Plaintiff, and against Defendant. (ECF. No. 119.) The Court entered a Judgment Order in Plaintiff's favor in the amount of $2,123,145.63 on March 16, 2016, and by Order also denied Defendant's motion as a matter of law. (ECF No. 120.)

## II.    MOTION FOR JUDGMENT AS A MATTER OF LAW

At the conclusion of Plaintiff's case, Defendant moved pursuant to Federal Rule of Civil Procedure 50(a) for judgment as a matter of law, (ECF No. 111), to preserve the right to renew that same motion after the jury returned its verdict. *See Lightning Lube, Inc. v. Witco Corp.*, 802 F. Supp. 1180, 1184-85 (D.N.J. 1992). The Court denied Defendant's motion. (ECF No. 120.) Accordingly, Defendant satisfies the threshold requirement for reconsideration of its motion under Federal Rule of Civil Procedure 50(b).

Judgment as a matter of law is appropriate where "there is no legally sufficient evidentiary basis for a reasonable jury" to find in favor of the prevailing party. Fed. R. Civ. P. 50(a); *see also Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) ("Such a motion should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability."). In considering the evidence, "the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube, Inc.*, 4 F.3d at 1166. "Although judgment as a matter of law should be granted sparingly, a scintilla of evidence is not enough to sustain a verdict of liability." *Id.* To that end, the proper inquiry on a motion for a judgment as a matter of law is "whether there is evidence upon which the jury could properly find a verdict for [the prevailing] party." *Id.* (quoting *Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir. 1978)). In other words, judgment as a matter of law should be granted if the record is "critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." *In re Lemington Home for the Aged*, 777 F.3d 620, 626 (3d Cir. 2015) (quoting *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001)). Finally, "[t]he burden on a defendant who raises a challenge to the sufficiency of the

evidence is extremely high[.]" *State Farm Mut. Auto. Ins. Co. v. Lincow*, 444 F. App'x 617, 621

(3d Cir. 2011) (quoting *United States v. Riley*, 621 F.3d 312, 329 (3d Cir. 2010)).

### A.     Weight of the Evidence

Defendant contends that despite the verdict, this Court should enter judgment in its favor

on the breach of contract claim. (*See* Def.'s Moving Br. 1-2, 24-32, ECF No. 124.) In support of

this argument, Defendant contends that: (1) "there was absolutely no reasonable basis for the jury

to conclude that Danish Crown delivered product that met the specifications set forth in the 2009

Bac k Rib Agreement"; and (2) Plaintiff's "damages claims at trial lack[ed] any reasonable degree

of certainty." (*Id.* at 1-2.) Defendant argues, in the alternative, that it is entitled to a new trial

under Rule 59(e) "because the verdict was against the weight of the evidence . . .[,] the jury's

findings were inconsistent, and improper mischaracterization of evidence (D-70) improperly

prejudiced the jury." (*Id.* at 2.) Plaintiff argues that Defendant cannot meet its burden under the

standard, and Defendant's motion should be denied. (*Id.*)

The Court disagrees with Defendant and finds a sufficient evidentiary basis for a reasonable

jury to find in Plaintiff's favor. Because the jury returned a verdict in favor of Plaintiff (ECF No.

119), the Court must examine the record in the light most favorable to Plaintiff, giving Plaintiff

"the benefits of all reasonable inferences, even though contrary inferences might reasonably be

drawn." *In re Lemington Home for the Aged*, 777 F.3d at 626 (quoting *Dudley v. S. Jersey Metal,*

*Inc.*, 555 F.2d 96, 101 (3d Cir. 1977)); *see also Warren v. Reading Sch. Dist.*, 278 F.3d 163, 168

(3d Cir. 2002). To prevail on its motion, Defendant must prove that "any verdict other than the

one directed would be erroneous under the governing law." *Brownstein v. Lindsay*, 742 F.3d 55,

63 (3d Cir. 2014) (quoting *Macleary v. Hines*, 817 F.2d 1081, 1083 (3d Cir. 1987)). The governing

law in the instant case requires the Court to consider the statutory framework relevant to the contract dispute between the parties.

New Jersey has adopted the Uniform Commercial Code ("UCC"), which fixes the obligations imposed on buyers and sellers relating to the sale of goods, as well as the remedies for nonperformance by either party. N.J.S.A. 12A:2-101 to -725. The 2009 Back Rib Agreement at the crux of this dispute was a contract between two merchants for the sale of goods, and is therefore governed by the UCC. By definition, goods "conform to the contract when they are in accordance with the obligations under the contract." N.J.S.A. 12A:2-106(2). Under the UCC, "[t]he obligation of the seller is to transfer and deliver" goods to the buyer and "the buyer is to accept and pay in accordance with the contract." N.J.S.A. 12A:2-301. The 2009 Back Rib Agreement is also an installment contract. N.J.S.A. 12A:2-612(1). "An 'installment contract' is one which requires or authorizes the delivery of goods in separate lots to be separately accepted, even though the contract contains a clause [that] 'each delivery is a separate contract' or its equivalent." *Id.*

Here, Plaintiff transferred and delivered ribs to Defendant in accordance with the 2009 Back Rib Agreement. (*See* ECF No. 132 at 208-09.) Plaintiff delivered 110 containers of wide back ribs to Defendant between early-2009 and mid-2010. (*See id.*; ECF No. 135 at 150-51.) Moreover, Plaintiff introduced evidence at trial demonstrating that it was willing and able to deliver the balance of wide back ribs to Defendant. (*See* ECF No. 132 at 22-24.) Thus, under the UCC, although Plaintiff provided Defendant with, at least, some non-conforming ribs, there was sufficient evidence presented for the jury to reasonably conclude that Plaintiff performed or satisfied its obligations under the 2009 Back Rib Agreement. *See* N.J.S.A. 12A:2-301 (stating that "[t]he obligation of the seller is to transfer and deliver" to the buyer goods subject to their agreement).

6

Under the UCC, "[a]cceptance of goods occurs when the buyer (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that [the buyer] will take or retain them in spite of their non-conformity; or (b) fails to make an effective rejection[.]" N.J.S.A. 12A:2-606(1)(a), (b). In the context of an installment contract, a buyer's "[a]cceptance of a part of any commercial unit is acceptance of that entire unit." N.J.S.A. 12A:2-606(2). "Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a non-conformity cannot be revoked because of it unless the acceptance was on the reasonable assumption that the non-conformity would be seasonably cured[.]" N.J.S.A. 12A:2-607(2). Thus, a buyer seeking to reject goods bears the burden of proving that the goods were defective and establishing any breach with respect to the accepted goods. N.J.S.A. 12A:2-607(4).

Under the UCC, once a buyer accepts the goods, it is necessary to determine whether the buyer properly rejected the goods. A buyer's effective "[r]ejection of goods must be within a reasonable time after their delivery or tender[, and it] is ineffective unless the buyer seasonably notifies the seller." N.J.S.A. 12A:2-602(1). Moreover, a "buyer may reject any installment which is non-conforming if the non-conformity substantially impairs the value of that installment and cannot be cured[.]" N.J.S.A. 12A:2-612(2). For an installment contract, the buyer must prove that the alleged defect substantially impaired the value of the installment as a whole. *Gulf Chem. & Metallurgical Corp. v. Sylvan Chem. Corp.*, 126 N.J. Super. 261, 263 (App. Div. 1973) ("The burden of proof was on [buyer] to prove that a substantial impairment of the contract had taken place."), *certif. denied*, 64 N.J. 507 (1974); *see also Cassidy Podell Lynch, Inc. v. Snydergeneral Corp.*, 944 F.2d 1131 (3d Cir. 1991) (determining whether failure to pay for first shipment in installment contract constituted substantial impairment). "Whenever non-conformity or default

with respect to one or more installments substantially impairs the value of the whole contract there is a breach of the whole." N.J.S.A. 12A:2-612(3). The aggrieved party, however, "reinstates the contract if [the party] accepts a non-conforming installment without seasonally notifying of cancellation or if [the party] brings an action with respect only to past installments or demands performance as to future installments." N.J.S.A. 12A:612(3). To that end, the determination on whether a substantial impairment of the contract has occurred is a question of fact. *Cassidy Podell Lynch, Inc.*, 944 F.2d at 1148 (citing *Graulich Caterer, Inc. v. Hans Holterbosch, Inc.*, 101 N.J. Super. 61, 75-76 (App. Div. 1968)).

Here, some of the ribs delivered to Defendant did not meet the Specifications as outlined in the 2009 Back Rib Agreement. (*See* ECF No. 135.) Under the UCC, those ribs are considered non-conforming. *See* N.J.S.A. 12A:2-106(2) (stating that goods "conform to the contract when they are in accordance with the obligations under the contract"). Both parties acknowledge that Defendant notified Plaintiff that a small percentage of the goods contained non-conforming ribs, but Defendant nonetheless retained the goods in spite of their non-conformity and continued to accept installments. (*See* ECF Nos. 124, 128, 135.) Thus, despite receiving non-conforming goods, Defendant continued to accept the installments delivered under the 2009 Back Rib Agreement and therefore failed to reject the goods under the UCC. *See* N.J.S.A. 12A:2-602. Moreover, even if the jury concluded that Defendant met its burden by proving that one or more installments delivered under the 2009 Back Rib Agreement contained shiners or non-conformities, the record is devoid of facts that would indicate whether these alleged non-conformities were a substantial impairment to the value of the contract as a whole. *See* N.J.S.A. 12A:2-612(3). Accordingly, the Court finds there is a reasonable basis for the jury to have concluded that Plaintiff met its obligation under the 2009 Back Rib Agreement, and Defendant breached the contract by

failing to reject the goods under the UCC. *See* N.J.S.A. 12A:612(3). Moreover, based on the evidence presented to the jury, the Court finds that it is reasonable to conclude that the non-conforming ribs did not substantially impair the value of the 2009 Back Rib Agreement as a whole. *See* N.J.S.A. 12A:2-612(2).

### B.    Damages

The party asserting a breach of contract claim bears the burden of persuasion to establish all elements of the cause of action, including the damages. *Cumberland Cty. Imp. Auth. v. GSP Recycling Co.*, 358 N.J. Super. 484, 503 (App. Div. 2003). "Under [New Jersey's] common law principles, 'a party who breaches a contract is liable for all of the natural and probable consequences of the breach of the contract.'" *Sons of Thunder v. Borden, Inc.*, 148 N.J. 396, 427 (1997) (quoting *Picket v. Lloyd's*, 131 N.J. 457, 474 (1993)). To recover damages for non-acceptance or repudiation by the buyer, Danish Crown is required to prove "the difference between the market price at the time and place for the tender and the unpaid contract price together with any incidental damages . . . less expenses saved in consequence of the buyer's breach." N.J.S.A. 12A:2-708(1).

A plaintiff "must prove the amount of damages with a reasonable degree of certainty, that the wrongful act of the defendant caused the loss of profit, and that the profits were reasonably within the contemplation of the parties at the time the contract was entered into." *Sons of Thunder*, 148 N.J. at 427 (quoting *Unique Sys., Inc. v. Zotos Int'l, Inc.*, 622 F.2d 373, 378-79 (8th Cir. 1980)) (affirming trial court's conclusion that plaintiff provided its lost profits to a reasonable degree of certainty); *see also In re Merritt Logan, Inc.*, 901 F.2d 349, 359 (3d Cir. 1990) (finding sufficient evidence included plaintiff's testimony, an expert's testimony, *pro forma* operating statement, and defendant's statement concerning that *pro forma*, which showed to a reasonable certainty that

9

plaintiff would have earned profits).  Finally, a court reviewing a jury verdict has an "obligation . . . to uphold the jury's award if there exists a reasonable basis to do so." *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 351-52 (3d Cir. 2001) (quoting *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989)).

Here, the jury returned a verdict of $2,123,145.63 for Plaintiff.  (ECF No. 119.)  Defendant argues that the damages "lacked any reasonable degree of certainty and instead were purely speculative."  (Def.'s Moving Br. 29, ECF No. 124-1.)  The Court disagrees and finds that the evidence adduced at trial supports the jury's verdict to a reasonable degree of certainty. *See Evans*, 273 F.3d at 351-52.  Plaintiff presented evidence at trial that established the amount of damages it incurred because of Defendant's breach of the 2009 Back Rib Agreement.  (*See* ECF No. 135.) Following Defendant's improper rejection of the remaining installments of ribs, Danish Crown had to mitigate its damages by selling sixty-four containers (or approximately 2.5 million pounds) of ribs to third parties.  (*See* ECF No. 132.)

The jury also heard testimony from Stig Kjaeroe, the President and Chief Executive Officer of Danish Crown USA, a subsidiary of Plaintiff, regarding the goods that were directed to be sold before the goods became unsafe for consumption and needed to be destroyed.  (*See* ECF Nos. 132, 133.)  Mr. Kjaeroe testified that Plaintiff's loss from the resale of the rejected goods was $2,555,710.91.  (*See* ECF No. 133.)  In support, Plaintiff admitted a spreadsheet entitled, "Rupari Inventory – December 30, 2011," which was prepared by Mr. Kjaeroe.[2]  The spreadsheet is a two-page document broken down into three sections.  (*See* Def.'s Opp'n Ex. L., ECF No. 124-2.)  One of those sections sets forth the various categories of ribs.  (*See id.*)  The other two categories set

---

[2] The spreadsheet entitled, "Rupari Inventory – December 30, 2011" is also referred to by the parties as "D-70."

forth the re-sale expenses Plaintiff sought to recoup. (*See id.*; ECF No. 133.) Some of those expenses include storage, freight, and administrative/sales expenses. (*See id.*) The jury additionally heard detailed testimony regarding the administrative resources Plaintiff employed to sell the rejected goods to other potential buyers. (*See* ECF No. 133.) The jury also heard witness testimony that explained the costs incurred by Plaintiff and provided details about the specific sale prices of the rejected ribs. (*See id.*; Def.'s Opp'n Ex. L., ECF No. 124-2.)

In sum, the testimony elicited and exhibits admitted into evidence at trial contained sufficient detail from which the jury could calculate to a reasonable certainty the damages associated with the contract claim. *See In re Merritt Logan, Inc.*, 901 F.2d at 359. The evidence presented at trial supports "the amount of damages with a reasonable degree of certainty," that the breach of the 2009 Back Rib Agreement by Defendant caused loss of profits, and "that the profits were reasonably within the contemplation of the parties at the time the contract was entered into." *Sons of Thunder*, 148 N.J. at 427. Thus, drawing all reasonable and logical inferences in the nonmovant's favor, the Court finds that Defendant fails to meet its "heavy burden" of showing that "a miscarriage of justice would result if the verdict were to stand." *Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1993). The Court finds Defendant's arguments unpersuasive, and holds that the weight of the evidence supports the jury's verdict against Defendant. Accordingly, Defendant's Motion for Judgment as a Matter of Law is **DENIED**.

## III.   MOTION FOR A NEW TRIAL

Defendant moves, in the alternative, for a new trial pursuant to Federal Rule of Civil Procedure 59. Federal Rule of Civil Procedure 59(a) provides that a court may award a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a). The purpose of a motion under Rule 59 is "to correct

manifest errors of law or fact or to present newly discovered evidence." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (quoting *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).  Courts have the discretion to grant a new trial on several grounds, including: "(1) that the verdict is against the weight of the evidence; (2) that the damages are excessive; or (3) that the district court made substantial errors in the admission or rejection of evidence or in its instructions to the jury." *Winnicki v. Bennigan's*, No. 01-3357, 2006 WL 2506738, at *1 (D.N.J. Aug. 28, 2006) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).  Thus, the decision whether or not to grant a new trial is committed to the sound discretion of the district court. *Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1017 (3d Cir. 1995); *see also Lyles v. Flagship Resort Dev. Corp.*, 371 F. Supp. 2d 597, 602 (D.N.J. 2005).

"[A] new trial should be granted only when the verdict is contrary to the weight of the evidence or when a miscarriage of justice would result if the verdict were to stand." *Brennan v. Norton*, 350 F.3d 399, 430 (3d Cir. 2003).  A district court may not "grant a new trial because it would have come to a different conclusion than that reached by the jury." *Lyles*, 371 F. Supp. 2d at 602.  Therefore, "[i]n determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube, Inc.*, 4 F.3d at 1166.  "The motion may be granted if 'the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.'"  *Lyles*, 371 F. Supp. 2d at 602 (quoting *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 166 F. Supp. 2d 19, 28 (D.N.J. 2001)).

The Court finds that a new trial is not appropriate, as the record does not show "that the jury's verdict resulted in a miscarriage of justice or [that] the verdict, on the record, cries out to be overturned or shocks [the Court's] conscience." *Grazier ex rel. White v. City of Phila.*, 328

12

F.3d 120, 128 (3d Cir. 2003) (quoting *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991)).  Here, the jury found that there is sufficient evidence to show Defendant breached the 2009 Back Rib Agreement by failing to reject the goods as defined by the UCC.  The Court also found, as discussed above, that the damages awarded by the jury are sufficiently supported by evidence presented at trial.  The Court disagrees with Defendant that the jury's findings are inconsistent, and that Plaintiff's counsel made prejudicial statements that may have influenced the jury's consideration of the spreadsheet detailing the costs incurred by Plaintiff.  Upon review of the trial evidence, the Court does not find that a miscarriage of justice would result if the verdict stands or that the verdict is contrary to the weight of the evidence.  *See Brennan*, 350 F.3d at 430.  Accordingly, Defendant's Motion for a New Trial is **DENIED**.

## IV.   CONCLUSION

The Court is satisfied that there is ample evidence to support the jury's verdict.  It is not the Court's role to second-guess the jury's fact-finding and consideration of the evidence.  In drawing all reasonable and logical inferences in the nonmovant's favor, the Court concludes that Defendant fails to meet its burden.  *See Klein*, 992 F.2d at 1290.  For the reasons set forth above, and for good cause shown, Defendant's motion is **DENIED**.  An Order will be entered consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: October 31, 2016

13